IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAILEY S. ZEYON, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID PITKINS, *et al.*, | : | NO. 09-2886 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    February  26, 2010

Before the Court is the *pro se* "Application For Habeas Corpus Under 28 U.S.C. § 2254" of

Tailey S. Zeyon ("Zeyon" or "Petitioner").   Petitioner challenges his state court conviction on the

grounds that he was convicted on insufficient evidence, that his trial and appeal counsel were

ineffective in several respects, and that the prosecution suppressed exculpatory evidence in violation

of his due process rights.  He also requests discovery and an evidentiary hearing to further develop

the factual record.   For the reasons set forth below, we conclude that the claims raised are

procedurally defaulted and/or fail on the merits and **RECOMMEND** that the petition be **DENIED**.

We further **RECOMMEND** that his request for discovery and an evidentiary hearing be **DENIED**.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 2002, Zeyon was tried before a judge without a jury on charges of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, indecent assault and indecent exposure.  N.T. Vol. I at 11-14.  He was represented at trial by David Marcial, Esq. *Id.* at 1.  While he was acquitted of the rape and IDSI charges, he was found guilty of sexual assault, indecent assault, and indecent exposure. (Resp. at 3); (Pet. at 10); N.T. Vol. II at 85-86.  On October 2, 2002, he was sentenced to a term of three and a half to ten years imprisonment.  (Pet. at 4); (Resp. at 3.)   On May 27, 2003, through new counsel, A. Charles Peruto, Jr., Esq., he filed a petition under the Pennsylvania Post-Conviction Relief Act  ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546, asserting that his trial counsel was ineffective for failing to file a direct appeal.  *Petition for Relief Under the Post-Conviction Act*, CP No. 0201-0542 (Pa. Ct. Comm. Pl. May 27, 2003).  The petition was granted and his direct appeal rights were reinstated *nunc pro tunc* on July 13, 2004.  *See Commonwelath v. Zeyon,* No. 2284 EDA 2004 (Pa. Ct. Comm. Pl. Jun. 20, 2005) (hereinafter "Resp. Ex. A".)

On August 10, 2004, Zeyon filed an appeal through Gina Capuano, Esq., a member Mr. Peruto Jr.'s law firm.  She asserted that the evidence was insufficient to sustain his conviction and that trial counsel was ineffective for failing to present character witnesses. *Notice of Appeal*, CP No.

---

[1]   In preparing this Report and Recommendation, we have reviewed Petitioner's Form "Application for Habeas Corpus Under 28 U.S.C. § 2254" ("Pet.") (Doc. 1), his Supplemental Submission in support of his petition filed on July 28, 2009 ("Pet'r Mem.") (Doc. 5), and the additional supplementation to his submission filed on August 3, 2009 ("Pet'r Supp. Mem.") (Doc. 6); the Response to Petition for Writ of Habeas Corpus ("Resp.") and accompanying exhibits filed on August 28, 2009 by the Philadelphia District Attorney's Office (Doc. 9); and Petitioner's Reply filed on October 13, 2009 ("Reply") (Doc. 11). We have also consulted, as necessary, the state court record items received on August 18, 2009 from the Clerk of Quarter Sessions of the Philadelphia Court of Common Pleas.

0201-0542 (Aug. 10, 2004); *Statement of Matters Complained of on Appeal*, CP No. 0201-0542 (Dec. 28, 2004). On March 7, 2006, the Superior Court rejected his appeal, holding that his insufficiency of the evidence claim was waived for his failure to adequately develop an argument in his appellate brief and that his ineffective assistance claim would be denied without prejudice to raise it under the PCRA. *Commonwealth v. Zeyon*, No. 2284 EDA 2004 (Pa. Super. Mar. 7, 2006) (hereinafter "Resp. Ex. B".)

Zeyon filed a second counseled PCRA petition on August 3, 2006. *Petition for Relief Under the Post-Conviction Act*, CP No. 0201-0542 (Aug. 3, 2006). With this petition, Carmen DiMario, Esq., another member of Mr. Peruto Jr.'s law firm, requested a hearing to evaluate the performance of Petitioner's trial counsel, but he failed to append signed certifications of those who would testify as required under the PCRA. *Id.* On April 9, 2007, the PCRA court denied the petition without a hearing. On April 30, 2007, Zeyon filed a *pro se* notice of appeal. *See Commonwealth v. Zeyon*, No. 1152 EDA 2007 at 4 (Pa. Super. May 28, 2009) (hereinafter "Resp. Ex. C".) David W. Barrish, Esq., was then appointed as counsel. On July 10, 2007, he filed an untimely Pa.R.A.P. 1925(b) statement, asserting that there were "no non-frivolous matters" that could properly be raised on appeal. *Statement of Matters Complained of on Appeal*, CP No. 51-CR-0105421 (Pa. Ct. of Comm Pl. Jul. 10, 2007).

On March 10, 2008, Zeyon filed a *pro se* "Application for Relief and Motion for the Appointment of Counsel," *see* Resp. Ex. C at 5, asserting that Mr. Barrish was ineffective. The Superior Court ordered Barrish to respond to the application and to petition the Court for remand pursuant to *Commonwealth v. Lawrence*, 596 A.2d 165, 168 (Pa. Super. 1991). (Resp. Ex. C at 5.) Barrish complied and in his petition asserted that remand was necessary to properly address prior

PCRA counsel's ineffectiveness. *Petition for Remand to Raise Pro Se Claims of Ineffective Assistance of Counsel*, CP No. 51-CR-0105421 (Jun. 6, 2008). On May 28, 2009, the Superior Court denied the petition for remand and affirmed the decision of the PCRA court. (Resp. Ex. C at 9.)

On June 26, 2009, Zeyon filed this habeas petition, contending that he was convicted on insufficient evidence, that his attorneys were constitutionally ineffective, and that the prosecution suppressed exculpatory evidence and suborned false testimony in violation of his due process rights. (Pet. at 1, 9-10.) He also asks for discovery and an evidentiary hearing. (Pet'r Mem. at 11-15.) The District Attorney of Philadelphia County (alternatively the "District Attorney" or "Respondent") filed an Response to the petition on August 28, 2009, asserting that the claims are procedurally defaulted and, in any event, are without merit. (Resp. at 6-14.)

## II.   MOTION FOR DISCOVERY AND AN EVIDENTIARY HEARING

Before addressing the substantive grounds raised in the petition, we must first address Petitioner's request for discovery and an evidentiary hearing. (Pet'r Mem. at 11-15); *see also* Pet'r Supp. Mem. at 2-8.

### A.   Motion for Discovery

Zeyon invokes Rule 6 of the Rules Governing Section 2254 cases as the basis for his request for discovery. (Pet'r Mem. at 11.) Understanding that a habeas petitioner, "unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course[,]" *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), the rule provides that

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good

cause shown grants leave to do so, but not otherwise.

28 U.S.C. § 2254 Rule 6(a).  Good cause can be established only where a petitioner sets forth "specific allegations" that lead the Court to believe that, if the facts where fully developed, he may be entitled to relief.[2] *Marshall v. Beard*, Civ. No. 03-3308, 2004 WL 1925141 at 1 (E.D. Pa. Aug. 27, 2004).  This standard requires that a petitioner provide more than "bald assertions" or "conclusory allegations" in support of a discovery request.  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).  Once good cause is shown, the scope and extent of discovery is left to the discretion of the district court.  *Bracy*, 520 U.S. at 909.

As a preliminary matter, however, the Court must identify the essential elements of Zeyon's claims and address whether his discovery requests are related to a proper constitutional challenge set out in his petition.  *Id.* at 904-05; *Abu Jamal v. Horn*, Civ. No. 99-5089, 2001 WL 1609690 at *14 ( E.D. Pa. Dec. 18, 2001).  Petitioner contends that discovery of a "towel" he allegedly used on the night of the sexual activity and certain "phone records" would enable him to further his due process claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  (Pet'r Mem. at 11-14.)  To make out this *Brady* claim, Petitioner must establish: (1) the prosecution inadvertently or deliberately suppressed; (2) exculpatory or impeachment evidence; (3) which was "material."  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Before evaluating the connection between the proposed

---

[2] In *Bracy*, the Supreme Court held that a petitioner had established good cause for discovery on a due process claim based upon judicial bias.  520 U.S. at 901, 908-09.  In reaching this conclusion, the Court explained that the petitioner had "supported his discovery request by not only pointing to [the judge's] conviction for bribe taking in other cases, but also to additional evidence . . . that lends support to his claim that [the judge] was actually biased *in petitioner's own case*[, including] 'specific allegations' that his trial attorney" may have agreed to take his capital case to trial quickly to quiet suspicion over two "rigged" cases the judge had recently presided over.  520 U.S. at 908-09.

discovery and his *Brady* challenge and the question of "good cause," a statement of particulars is necessary to put his claims and discovery requests in a meaningful context.

The complainant worked as a residential advisor for a company that managed a number of homes for the mentally disabled in Philadelphia. N.T. Vol. I at 29. On the night of the incident, she was asked by her supervisor to work the overnight shift at a home where she had previously never worked. *Id.* at 27-28. When she arrived she was introduced to Zeyon, another employee of the company, who was to "give her a tour of the site." *Id.* at 29. After the tour, Zeyon remained at the house, and according to complainant's testimony, after about an hour of "talking and watching TV[,]" he sexually assaulted her three separate times, despite her pleas to him that he stop. *Id.* at 29-45. Zeyon testified that the sexual interaction was consensual. N.T. Vol. II at 71-73.

After the incident, the complainant called her aunt and a friend to alert them that she needed help. *Id.* at 45-47. According to her testimony, however, she could only hint to them that something was wrong in that Zeyon was right next to her. *Id.* When this call for help was unsuccessful, she testified that she then tried "to sneak into the office [downstairs,] to dial 9-1-1 on the office phone." *Id.* at 49. She stated, however, that she mistakenly used the office fax machine, which "rang back immediately" and attracted Zeyon's attention. *Id.* at 50. After he went down to "check out" the fax machine to see if a fax had come in, she asserted that she remembered that her cell phone was in her pocketbook. *Id.* Once she was able to retrieve her phone, she went to the "staff bathroom" and called her aunt to tell "her what had happened and . . . to call 9-1-1 and [her friend]." *Id.* at 51. The police arrived shortly thereafter. *Id.* at 51-52. The Petitioner testified that "[a]fter the sex" the complainant wanted to relax and go to sleep. N.T. Vol. II at 77. He stated that he would wake her up in the morning, but first went to the "bathroom to wash himself." *Id.* He then stated that "[e]ven

the towel I used to wash, I believe the police have it, I hang it up in the basement and leave it up there." *Id.*

Zeyon's request for "legal discovery related to **PHONE RECORDS, TOWEL USED BY PETITIONER,** [and] **COMPANY RECORDS**" are therefore aimed at evidence which he contends would have impeached the complainant's testimony as to her behavior after their sexual encounter. (Pet'r Mem. at 12-14.) Even if we were to accept the doubtful assumption that Petitioner's request is relevant to a proper *Brady* claim, we are unable to conclude that he has established the "good cause" necessary to support this request. 28 U.S.C. § 2254 Rule 6(a).

The only specific allegation Zeyon offers in support of his discovery request is as follows:

> Petitioner maintains that the utilization of the **DISCOVERY REQUESTS** in this matter are directly related to evidence observed by the prosecution to be **EXCULPATORY.** Where it is the prosecution whom is fully aware that such is **BRADY MATERIAL**. Under a set of circumstances that goes **directly against the credibility** of testimony of the . . . prosecution's primary witness. Where such even includes a towel utilized by this petitioner to take a shower. When the complainan[t] was using petitioner's phone.
>
> It would be most apparent that the evidence as should be recorded related to the matter of the towel, would verify that petitioner spent more than enough time away for a call to the police.

(Pet'r Mem. at 13-14) (emphasis in original.) We do not consider the towel to represent *Brady* material, even in light of his allegations, and deny his discovery request in this respect. We see no indication that the evidence of the towel was "suppressed" by the prosecution as *Brady* would require.[3] Zeyon's own trial testimony made it clear that he was aware of this evidence and its

---

[3] Indeed, the prosecution will not be found to "suppress" evidence for *Brady* purposes that the accused could have obtained through the exercise of reasonable diligence or which is not in the actual or constructive possession of the prosecution. *United States v. Risha*, 445 F.3d 298, 302 (3d Cir. 2006); *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991); *see Wilson v. Beard*, 589 F.3d 651 (3d Cir. 2009).

possible location. N.T. Vol. II at 76-77. He could have certainly inquired about the towel and presumably obtained it.

We are also unable to see how the towel was "material" as required by *Brady*. It could not have had anything more than a marginal impact upon the question of Zeyon's testimony about his shower or whether the complainant had sufficient time to call the police. We likewise fail to see how the towel could have "impeached" complainant's testimony. The complainant stated that she made several attempts to call for help, but was "scared" and careful not to "arouse [Petitioner's] suspicion," not that she never had an opportunity to dial 9-1-1. *See* N.T. Vol. I at 46-51, 69-72, 79-81. Indeed, while the trial judge was aware of Petitioner's contention that he went to the bathroom to "wash" himself after the incident, he did not find his testimony to materially undermine complainant's credibility. *See* N.T. Vol. II at 77, 82-86. We are unable to decipher how the presence of the towel at trial would have impacted the judge's determination. *See Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995) (setting out *Brady*'s materiality standard). We therefore conclude that he has not demonstrated good cause for discovery of this evidence.

The only specific allegation that Zeyon makes that is arguably connected to his request for "phone records" is his assertion that the complainant used *his cell phone* on the night of the incident. (Pet'r Mem. at 13.) However, *his own phone records* clearly could not have been "suppressed" by the prosecution in that he could have obtained this information through the exercise of reasonable diligence. *Risha*, 445 F.3d at 202. Thus, these phone records do not constitute *Brady* material, even if we were to accept, which we do not, that they might be potentially impeaching or material. Additionally, it is not clear whether Zeyon's allegation that she used his phone is inconsistent with

the complainant's testimony.[4]   In any event, regardless of what phone she used, her aunt would still have provided detailed testimony concerning the substance of each of the phone calls the complainant placed to her that night.  *See* N.T. Vol. I at 19-23.  We therefore conclude that this evidence, even if inconsistent with complainant's testimony regarding the specific phone she used, would not be material and recommend that his request for discovery of these records be denied.[5]

Zeyon also identifies the complainant's phone records and the "company's [phone] records" as a possible basis for a *Brady* violation.  (Pet. at 10.)  He does not, however, provide any specific allegation as what he expects discovery of this material would demonstrate.  Without such guidance, we must also deny his discovery request with respect to these materials.  *See Bracy*, 520 U.S. at 908-09.

In the section of his submission dedicated to his "**REQUEST FOR DISCOVERY**[,]" Zeyon also claims that all of his attorneys "deliberately suppressed a substantive part of the Discovery."  (Pet'r Mem. at 11.)  We do not construe his arguments with respect to his attorney's conduct to be an independent discovery request.  *See id.* at 14; Pet. at 10.  Indeed, it appears he was

---

[4] *See* N.T. Vol. I at 45-47 (reflecting she "asked to use the phone" that was "right beside him"); *id* at 69 (reflecting that there were two phones were next to Petitioner when she asked to use a "phone," including his cell phone and a company phone); *see also* Resp. Ex. D (reflecting that her written statement to the police on the night of the incident suggested, without certainty, that she was using Zeyon's phone; "[h]e was calling his family.  Then he asked to use the phone to call my family and he left me use it [sic]").

[5] To the extent his discovery request is connected to his claim that the prosecution violated his due process rights by "**COVER**[ing] **UP SUBBORNATION OF PURJURY** [sic]," we conclude that he has failed to demonstrate good cause.  A conviction will violate due process when it is based upon the prosecution's knowing use of false testimony and that testimony was material to the outcome, as defined in *Brady v. Maryland*.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  As we determined above, in that the specific allegations underlying his requests do not materially undermine complainant's testimony, we are unable to accept that he could, through discovery, demonstrate that he may be entitled to relief under *Giglio*.

already provided with trial transcripts at the close of his PCRA proceedings. (Reply at 6.) Petitioner does assert, however, that the court should "ascertain truthful testimony from both the prosecution and defense counsels" in an attempt to "verify" what materials were turned over by the prosecution and exchanged between his defense attorneys.[6] It appears from our reading of his argument, even as it is developed in the "discovery" sections of his submissions (Pet'r Mem. at 14); (Pet'r Supp. Mem. at 4-8), that he requests an evidentiary hearing to take testimony from all of the attorneys involved in his case to establish whether the prosecution committed "**CUMULATIVE BRADY VIOLATIONS**" or his own attorneys "acted as illegal suppressing agents of the state." (Pet'r Mem. at 11); *see* Pet'r Supp. Mem. at 2-3, 7 ("IT would therefore be the determination of the particular counsel should he take the position to testify and lie under oath [sic].") We therefore consider whether he is entitled to an evidentiary hearing to further develop his *Brady* claim or his arguments with respect to his attorneys, which we construe as an assertion of ineffective assistance of counsel and "cause" for his failure to present his *Brady* claim in state court.

B.        **Motion for Evidentiary Hearing**

A petitioner's request for an evidentiary hearing in a federal habeas proceeding is generally governed by 28 U.S.C. § 2254(e)(2). This provision provides that "[i]f the [petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary

_____

[6] (Pet'r Mem. at 11); *see* Pet'r Supp. Mem. at 2 ("Where this Honorable Court obtains information related to both the prosecution and that of defense counsels. Regarding just what was provided and what was received **WHERE ABSOLUTELY NONE OF IT WAS PROVIDED TO THIS PETITIONER AT ANY GIVEN TIME** [sic.]"); *id.* at 4 ("[T]his petitioner maintains thta there is the requirements for ascertaining whether the allegations made by the prosecution that such was ever provided to any of the defense counsels would be verified as true by such counsel [sic.]").

hearing on the claim," unless certain conditions are met.[7]  Where there is a deficiency in the factual

record that is not attributable to the petitioner, however, the requirements of § 2254(e)(2) do not

apply.  *See Williams v. Taylor*, 529 U.S. 420, 432 (2000).  In *Williams*, the Supreme Court held that

"a failure to develop the factual basis of a claim is not established unless there is a lack of due

diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."   529 U.S.

at 432.  If a petitioner pursued a claim with diligence in state court, but it remains undeveloped, a

district court may grant him an evidentiary hearing if it  "would be meaningful, in that a new hearing

would have the potential to advance the petitioner's claim."[8]  *Campbell v. Vaughn*, 209 F.3d 280,

287 (3d Cir. 2000).

---

[7] Specifically, if the petitioner "has failed to develop the basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –"

> (A) the claim relies on-
>
>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; **and**
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added.)

[8] Zeyon does not assert that he can meet the strict mandates of 28 U.S.C. § 2254(e)(1), and as reflected in our review of his *Brady* claim, we do not consider "the facts underlying his claims to establish by clear and convincing evidence that but for constitutional error, no reasonable fact- finder would have found" Petitioner guilty.  Thus, unless Petitioner can establish that he was diligent, but nonetheless unable to sufficiently develop the record, his request for a hearing must be denied.

Zeyon asserts that the failure to develop the factual basis of his claims in state court was "primarily the fault of the prosecution" and his "defense counsels." (Pet'r Supp. Mem. at 2-3) (citing *Buda v. Stickman*, 149 Fed App'x 86 (3d Cir. 2005)); *see also* Pet. at 10 (noting that failure to present *Brady* claim in state court was due to "all counsel's ineffectiveness"). He claims that an evidentiary hearing would enable him to develop facts related to his *Brady* claim and his ineffective assistance of counsel claims. *See* Pet'r Mem. at 11; Pet'r Supp. Mem. at 2-3. With respect to his *Brady* claim, he asserts that a hearing "could appraise the Court of the extensive illegal suppression of all [alleged *Brady* materials]," and establish that this evidence was "fully know by the prosecution as [exculpatory.]" (Pet'r Mem. at 11.)

We conclude that Petitioner was not diligent in developing the factual basis of his *Brady* claim. Diligence requires the petitioner to make a "reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court[.]" *Williams*, 529 U.S. at 435. Generally, a petitioner must, at a minimum, request an evidentiary hearing in state court. *Williams*, 529 U.S. at 437; *see Pursell v. Horn*, 187 F. Supp. 2d 260, 325-26 (W.D. Pa. 2002) (holding petitioner was diligent where he twice requested an evidentiary hearing in state court to pursue his *Brady* claims). Zeyon, however, presses this challenge for the first time in this petition, having failed to request a hearing with respect to this claim in state court. While a petitioner will not be expected to pursue a *Brady* claim where he would have been unaware of concealed exculpatory evidence during state proceedings, *see Williams*, 529 U.S. 434-45, it has not been suggested here that Petitioner and/or his trial attorney were unaware of the information necessary to pursue the *Brady* claim he now presents.

Zeyon asserts that the prosecution suppressed phone records that correspond with the calls

made the night of his arrest, including his own phone records. (Pet. at 9-10.) The phone calls that give rise to the allegedly suppressed records were the subject of substantial trial testimony. N.T. Vol. I at 19-21, 46-52. Given that he and his attorney knew these calls were allegedly placed, a reasonable investigation would certainly have uncovered whether there were in fact any relevant phone records, and if so, whether they were in the possession of the prosecution and – otherwise unavailable – even assuming that they may have been material. Similarly, as we discussed above, Petitioner also knew of the existence of the towel that he claims was suppressed by the prosecution. N.T. Vol. II at 76-77. It was not concealed from Petitioner or his counsel and a reasonable investigation would have uncovered whether the police or prosecution indeed had the towel and whether it was material. *C.f. Williams*, 529 U.S. at 439 (holding that petitioner was not diligent where "transcripts [of a sentencing proceeding] put petitioner's state habeas counsel on *notice* of the [psychiatric reports] *existence and possible materiality*.") (emphasis added.) We therefore conclude that, through the exercise of reasonable diligence, Petitioner could have developed the facts necessary to raise his purported *Brady* claim in state court.

Even if we were to conclude that Petitioner exercised diligence, we would deny his request for an evidentiary hearing in that a new hearing would not advance his *Brady* challenge. *See Campbell*, 209 F.3d at 287. He did not present his claim in state court and would now be barred from raising it now. *See* Section IV.B.1; Section IV.D. This procedural default precludes federal review unless he can establish "cause and prejudice" or a "fundamental miscarriage of justice." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Thus, he would have to satisfy these standards before this Court could provide a meaningful evidentiary hearing on the merits of his *Brady* claim. Although he argues that his failure to present this claim was due to the fact that the

"prosecution **never provided the mandatory discovery,**" (Pet'r Mem. at 11), or "all counsel's

ineffectiveness," (Pet. at 10), we conclude, for the reasons set out in our discussion of the *Brady*

claim, that he is unable to satisfy the "cause and prejudice" or the"fundamental miscarriage of

justice" standard. *See* Section IV.D. Thus, we recommend that his request for an evidentiary hearing

on his *Brady* claim be denied.[9]

Zeyon also asserts that all of his attorneys were ineffective for failing to provide him any

discovery, transcripts, or other evidence that he requested during PCRA review. (Pet'r Supp. Mem.

at 2); *see* Pet'r Mem. at 3-4. As we explain in our analysis of this claim, even accepting that he

could fully establish that he requested and was not provided with his trial materials during his PCRA

---

[9]Petitioner does not request an evidentiary hearing with respect to the issue of procedural
default, but he does assert that "all counsel's ineffectiveness" prevented him from presenting his
*Brady* claim in state court, (Pet. at 10), and that if his attorneys "testif[ied]" that the prosecution
"**never provided the mandatory discovery,**" it would establish that they "failed to insure that their
client would even be able to establish a viable defense [sic,]" and "acted as suppressing agents of
the state." (Pet'r Mem. at 11.) If we were to construe this argument as an additional request for a
hearing on the issue of "cause" for his procedural default, our conclusion would not change. In
*Cristin v. Brennen*, the Third Circuit held that 2254(e)(2) does not apply to requests for evidentiary
"hearings on excuses for procedural default." 281 F.3d 404, 418-19 (3d Cir. 2002). The decision
to hold an evidentiary hearings on this issue is within the discretion of the district court, regardless
of whether the petitioner was diligent in developing facts relating to "cause and prejudice." *Id.*
A hearing on the "cause" of Zeyon's default would not be meaningful. An attorney error will
only constitute "cause" if the error rises to the level of a Sixth Amendment violation. *Coleman v.
Thompson*, 501 U.S. 722, 753-55 (1991). Further, an attorney cannot be deemed constitutionally
ineffective for failing to raise a meritless argument. *United States v. Sanders*, 165 F.3d 248, 253 (3d
Cir. 1999). As we explain in our analysis of his *Brady* claim, addressing the question of "cause and
prejudice" largely parallels a consideration of the merits of his *Brady* challenge. *See Banks v.
Dretke*, 527 U.S. 668, 691 (2004) (stating analysis of procedural default can parallel merits of *Brady*
claim, in that "if [petitioner] succeeds in demonstrating "cause and prejudice," he will at the same
time suceed in establishing the elements of his . . . *Brady* claim.) Thus, in determining that the
prosecution's "suppression" did not "cause" his default and that he cannot establish "prejudice[,]"
we also pass upon the merits of his claim. In that we conclude that his *Brady* claim is without merit,
a hearing to determine whether his attorneys were ineffective for failing to raise this claim is
unnecessary.

appeal, he cannot establish a constitutional violation. *See* Section IV.C.4. Thus, we recommend that his request for a hearing on this ineffective assistance of counsel claim be denied.

As we recommend that his requests for discovery and an evidentiary hearing be denied, we proceed to consider Zeyon's petition, after first setting forth the standards by which such review is guided.

## III.    LEGAL STANDARDS

### A.          Exhaustion of State Remedies, Procedural Default

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment under is that the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In order for a petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional issues," he must have "fairly presented" the federal claim to the state courts "by invoking one complete round of the established appellate review process." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requirement ensures that state courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).

If a bypassed state remedy is no longer available because it is time-barred due to an independent and adequate state ground, the petitioner will be deemed to have procedurally defaulted those claims. *O'Sullivan*, 526 U.S. at 848. Where a claim is procedurally defaulted, it cannot provide a basis for federal habeas relief unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims

will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause sufficient to excuse default requires a showing that some objective factor, outside of counsel's or petitioner's control, prevented compliance with state procedural rules. *See Caswell v. Ryan*, 953 F.2d 853, 862 (3d. Cir. 1992) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner is prejudiced if he can show that an error caused him "actual and substantial disadvantage." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

Absent cause and prejudice, the petitioner can only excuse a procedural default by satisfying the "fundamental miscarriage of justice" standard, which requires that he demonstrates through new reliable evidence that a "constitutional error has caused the conviction of an innocent person." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The federal habeas court must be convinced that, in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536 (2006) (citing *Schlup*, 513 U.S. at 327)).

### B.        Standard for Issuance of the Writ

Pursuant to AEDPA, in cases where the claim presented in a federal habeas petition was adjudicated on the merits in the state courts, the petition shall not be granted unless the state court adjudication —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has made it clear that a habeas writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.* This requires the petitioner to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). In addition, this standard obligates the federal courts to presume that the "state courts know and follow the law" and precludes the federal court from determining the result of the case without according all proper deference to the state court's prior determinations. *Id.* at 24.

### C.     Standard for Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, 466 U.S. 668 (1994), the Supreme Court set out the test that a petitioner must satisfy before a court could find that counsel failed to provide effective assistance under the Sixth Amendment. This same standard has been incorporated by the Pennsylvania courts as the proper basis to consider challenges for ineffective assistance of counsel under the Pennsylvania constitution. *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of *Strickland* test to ineffective assistance of counsel claims). A Pennsylvania court's resolution of an ineffective assistance claim, therefore, is presumed to apply clearly established federal law and is due the substantial deference required by 28 U.S.C. § 2254(d). *See, e.g., Munoz v. Palakovich*, Civ. A. No. 05-4199, 2006 U.S. Dist. LEXIS 96657 at *11 (E.D. Pa.

Nov. 20, 2006), *approved and adopted* 2007 U.S. Dist. LEXIS 58516 (E.D. Pa. Aug. 9, 2007). This leaves us only to determine whether the Pennsylvania Superior Court unreasonably applied the *Strickland* standard here or otherwise based its decision upon an unreasonable factual determination.

Under the two-prong *Strickland* test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. 466 U.S. at 688-96. To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To satisfy the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It is self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

## IV.    DISCUSSION

Zeyon raises four grounds for relief, asserting that: (1) the evidence was insufficient to sustain his conviction (Pet. at 9);[10] (2) trial counsel was constitutionally ineffective (*id.*); (3) appeal counsel was constitutionally ineffective (Pet'r Mem. at 3-5, 8-10);[11] and (4) the prosecution deliberately withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) in order "to cover up" perjured testimony.  (Pet. at 9-10); *see* Reply 7-10.  Respondents assert that Petitioner's claims are unexhausted, procedurally defaulted, or without merit.  (Resp. at 6-14.)  As to each of Petitioner's claims, we consider whether he has complied with his obligation to have fairly presented to the state court the claims he raises here.  For those claims where we conclude that review is not precluded by the exhaustion requirement or independent and adequate state grounds, we consider the merits.  Ultimately, we conclude that relief is not warranted on any of his claims.[12]

_____

[10] Petitioner's first asserted ground in his petition is "**INSUFFICIENCY OF THE EVIDENCE./ INEFFECTIVENESS OF COUNSEL, (TRIAL) TO FILE NECESSARY MOTIONS TO PRESERVE SUCH FOR DIRECT APPEAL.**" (Pet. at 9.)  For the purposes of organizing our review, we consider this ineffectiveness claim in the context of his second asserted ground, which is "**INEFFECTIVENESS OF TRIAL COUNSEL.**"  (*Id.*)

[11] Petitioner also contends that his PCRA counsel did not challenge direct appeal counsel's performance in that both attorneys were members of the same law firm.  *See* Pet'r Mem. 3-11, Pet'r Supp. Mem. at 4; Reply at 4-5, 7.  Indeed, "**Ground Three**" of his petition concentrates specifically on the alleged conflict of interest between PCRA counsel and direct appeal counsel.  *See* Pet. at 9 ("**CONFLICTS COUNSEL RELATED TO ACTIONS OF SUCH DIRECT APPEAL COUNSEL TO COVER UP HIS VERY OWN INEFFECTIVENESS DURING SUCH DIRECT APPEAL NOW WAIVED.**")  However, in that the performance of a counsel during a post-conviction proceeding is not basis for habeas relief, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), his claim concerning the performance of PCRA counsel must fail.  We, therefore, construe ground three of his petition as a challenge to direct appeal counsel's performance, and consider his argument with respect to PCRA counsel only as "cause" for the default of this constitutional claim.

[12] Respondents do not contend that claims raised in the petition are untimely under the
(continued...)

19

## A.                Sufficiency of the Evidence

Petitioner's first claim for relief is that there was insufficient evidence to support his conviction. (Pet. at 9.) This claim implicates Zeyon's constitutional rights in that "an essential element of due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). While Zeyon presented this claim to the Superior Court of Pennsylvania when his direct appeal rights were reinstated in 2004, *see* Resp. Ex. B at 3, the Court found it to be waived, explaining that:

> [A]ppellant merely sets forth the relevant standard of review, followed by a bald assertion that the evidence was insufficient to sustain his conviction for sexual assault and indecent assault. Appellant does not set out the elements of each crime, let alone provide any analysis regarding how the evidence adduced at trial was insufficient to prove each of those elements. Appellant does not develop any argument with respect to his insufficiency claim, nor does he cite to any pertinent legal authority in support of such argument. . . . Therefore, appellant's second claim is waived. *See* Pa.R.A.P. 2119(a)[.]

(Resp. Ex. B at 5) (citation omitted.) His claim is therefore procedurally defaulted, provided the procedural rule that the Superior Court relied upon is an independent and adequate basis for its determination. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

---

[12](...continued)
standards set forth at 28 U.S.C. § 2244(d). Our review of the record also indicates that this federal habeas petition was timely brought.

A federal court will generally "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Coleman*, 501 U.S. at 729 (emphasis added.) The Superior Court determined that Zeyon's claim was waived under Pennsylvania Rule of Appellate Procedure 2119(a), a rule which is clearly distinct and independent of federal law. *Compare* Pa.R.A.P. 2119 (delineating standards for properly developing and organizing appellate arguments) *with Jackson*, 443 U.S. at 319 (providing federal standard for reviewing sufficiency of evidence in state criminal cases). We therefore turn to whether this rule is adequate to support the judgment.

A state procedural rule is adequate when it is "firmly established" and "regularly followed." *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009); *see Szuchon v. Lehman*, 273 F.3d 299, 325 (3d Cir. 2001) (stating that a state rule is adequate when it is "firmly established, readily ascertainable, . . . regularly followed" and all state appellate courts refuse to consider the merits of the claim). We consider Rule 2119 to be an adequate basis for the Superior Court's determination, in that it speaks in unmistakable terms,[13] is firmly established, and consistently followed. *See Commonwealth v.*

_____

[13] The language of the Rule 2119 is as follows:

> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

This section is followed by specific directives to cite to authorities, the record, and to provide a synopsis of all evidence relevant to the argument. *See* Pa.R.A.P. 2119(b), (c), (d).

*Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (holding failure to develop claim constitutes waiver under Rule 2119); *Commonwealth v. Gonzalez*, 608 A.2d 528, 531 (Pa. Super. 1992) (same). Our determination is consistent with other courts within the Eastern District of Pennsylvania that have considered this issue. *Kirnon v. Klopotoski*, 620 F. Supp. 2d 674, 675 (E.D. Pa. 2008) (holding that Pennsylvania Appellate Rule 2116 and 2119(a) were independent and adequate grounds); *Washington v. Patrick*, Civ. No. 05-6643, 2007 WL 3231705 at *9 (E.D. Pa. Oct. 30, 2007) (holding Rule 2119 was independent and adequate basis for decision); *Tyler v. DiGuglielmo*, Civ. No. 03-6491, 2005 WL 477997 at *4 (E.D. Pa. Feb. 28, 2005) (holding Rule 2119 is adequate, in that it is consistently applied and speaks in unmistakable terms).

Petitioner's procedural default may be excused if he can show "cause" for the default and "actual prejudice." *Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001) (citing *Edwards v. Coleman*, 529 U.S. 446, 451 (2000)). We conclude that Zeyon did not suffer prejudice as a result of his attorney's waiver of the sufficiency of the evidence claim in that it was without merit. When applying the constitutional standard for sufficiency of the evidence, the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). Indeed, "a federal habeas corpus court faced with a record of historical facts must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Under this standard, we are unable to conclude that the evidence was insufficient to sustain Zeyon's conviction for sexual assault, indecent assault, and indecent exposure. *See* N.T., Vol. II at 86.

Pennsylvania law requires that the Commonwealth must establish beyond a reasonable doubt that the defendant "engaged in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent" in order to support a charge of sexual assault. 18 PA. CONS. STAT. § 3124.1; *see Commonwealth v. Smith*, 863 A.2d 1172, 1176-77 (Pa. Super. 2004). A conviction for indecent assault requires the Commonwealth to prove that the defendant "had indecent contact with the complainant . . . without the complainant's consent." 18 PA. CONS. STAT. § 3125(a)(1); *see Commonwealth v. Capo,* 727 A.2d 1126, 1127 (Pa. Super. 1999). Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desires, in either person." 18 PA. CONS. STAT. § 3101. There is no dispute that Zeyon had sexual intercourse with the complainant (alternatively, "R.E."), *see* N.T. Vol. II at 78, and thus the material factual issue with respect to these two charges was whether she consented. *See Capo*, 727 A.2d at 1127-28 (noting that indecent contact encompasses direct sexual contact and other contact, including touching over clothing.)

We conclude that there is ample evidence for a rational fact-finder to determine that the complainant did not consent. The complainant ("R.E.") testified that during each sexual encounter she repeatedly told the Petitioner "no" and pleaded with him to "stop[]." NT. Vol. I at 33-34, 39-41. She also called her aunt after the incident, but because he was in her presence, tried to signal for her to call the police by saying, "Corey's been there since *nine* and he is going to need *eleven shots*." N.T. Vol. I at 48 (emphasis added); *see id.* at 19-20. R.E.'s aunt testified that she did not understand their conversation and noted that she "sounded like she was afraid or something." *Id.* at 19. The aunt claimed, however, that R.E. called again a short time later and said, "I've just been raped, call the police." *Id.* at 21. Lieutenant Daniel Bagnell testified that when he arrived on the scene and

asked if he could draw blood from Zeyon, he appeared nervous and "said, she's a demon, she made me do it." *Id.* at 84. Zeyon testified that R.E. aggressively initiated the sexual contact and claimed that it was consensual. N.T. Vol. II at 71-73. Although he denied ever engaging in anal sex with the complainant, *id.* at 79-80, rectal swabs taken after the incident were positive for the presence of sperm that matched his DNA. N.T. Vol. I at 69-70.

The trial judge stated that he "studied very closely the demeanor of the defendant while he was testifying [as to his testimony that R.E. was the one who instigated the sexual acts] and the court took what he said with a grain of salt." *Id.* at 83. The Court further stated that it "verily believes, that she did not come on to him in the fashion that he described. If anything, it was probably the other way around, and . . . even though there was no violence or there was no beating that she was subjected to, the law does not require that." *Id.* at 85. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational tier of fact could reasonably have determined that the essential elements of these crime were established beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). It was the trial judge's role as fact finder to resolve conflicts in the evidence presented as trial, and there was ample evidence to support his decision to credit the testimony of the complainant.

We also conclude that the evidence was sufficient to support Zeyon's conviction for indecent exposure. To sustain a conviction for that offense, the Commonwealth must demonstrate that a person "expose[d] his or her genitals in any public place or in any place where there are present other persons under circumstances where he or she knows or should know that his conduct is likely to offend, affront or alarm." 18 PA. CONS. STAT. § 3127(a); *see Commonwealth v. Tiffany,* 926 A.2d 503, 510-11 (Pa. Super. 2007). Although the incident giving rise to Zeyon's conviction did not

occur in a public place, it did happen at a residential home for the mentally disabled where both he and R.E. worked.  N.T. Vol. I at 25-28, 70.  Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonable conclude beyond a reasonable doubt that when he "exposed his . . . genitals" at his place of employment, he knew or should have known his conduct was likely to "offend, affront or alarm[,]" especially considering R.E.'s testimony that she pleaded with him to stop.  *See* 18  PA. CONS. STAT. § 3127(a);  NT. Vol. I at 33-34, 39-41.

Thus, in that his underlying sufficiency of the evidence claim is without merit,  we conclude that he is unable to demonstrate that his default caused him "actual and substantial disadvantage" warranting a finding of prejudice.  *U.S. v. Frady*, 456 U.S. 152, 170 (1982).  Absent a showing of cause and prejudice, procedural default will only be excused if the failure to consider a defaulted claim will result in a "fundamental miscarriage of justice." *Wenger v. Frank*, 266 F.3d at 223-24 (citing *Edwards v. Coleman*, 529 U.S. 446, 451 (2000)).  Although he asserts "actual innocence," Zeyon does not present or identify any new evidence that would demonstrate, "more likely than not[,]" that a reasonable juror would find a petitioner not guilty.  *See Coleman*, 501 U.S. at 750; *see Schulp v. Delo*, 513 U.S. 298, 324 (1995) (holding fundamental miscarriage of justice requires new evidence reliable evidence that constitutional error "caused the conviction of an innocent person").  Considering all of his arguments on the question of prejudice, we are unable to conclude that he has demonstrated constitutional error.

**B.**         **Ineffective Assistance of Trial Counsel**

Zeyon contends that his trial counsel was constitutionally ineffective in that he: (1) failed to perform a proper investigation; (2) failed to preserve his insufficiency of the evidence claim for direct appeal; (2) failed to use transcripts of the preliminary hearing to rebut the complainant's trial testimony, and (3) failed to call character witnesses on his behalf. (Pet. at 9.) The Respondent asserts that these claims are procedurally defaulted or meritless. (Resp at 6, 9-11.)

**1.**         **Failure to Investigate**

While Zeyon asserts that "[t]rial counsel was clearly ineffective in his failures to investigate[,]" he fails to develop this claim in the memorandum in support of his petition. (Pet. at 9.) Further, he did not present this claim to the state court on either direct or collateral review. His failure to exhaust these state court remedies would constitute a procedural default if he would now be barred from raising this claim in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999). The PCRA statute of limitations requires a prisoner to file a PCRA petition, including a second or subsequent petition, within one year of the date judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, "including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). After Zeyon's *nunc pro tunc* appeal was denied on March 7, 2006, he did not seek review from the Pennsylvania Supreme Court. His judgment, therefore, became final for PCRA purposes on April 6, 2006. *See* Pa.R.A.P., Rule 1113(a) (directing that an allowance of appeal to the Pennsylvania Supreme Court must be filed within "30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed"). In that Zeyon would be barred from raising his claim in state court for nearly four years,

26

it is procedurally defaulted.[14]  *See Whiney v. Horn*, 280 F.3d 240, 251 (3d Cir. 2002) (stating that PCRA limitations period is "a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and is strictly enforced in all cases").

The procedural default will be excused only if Zeyon can demonstrate "cause" and "prejudice," or a "fundamental miscarriage of justice."  *See Williams v. Taylor*, 529 U.S. 420, 433 (2000).  A petitioner may establish "cause" by demonstrating that a claim was defaulted due to the ineffective assistance of his attorney.  *Edwards v. Carpenter*, 120 U.S. 446, 453 (2000).  Although Zeyon asserts that his appeal counsel was ineffective for failing to challenge trial counsel's failure to investigate, we ultimately conclude that this claim is without merit.  *See* Section IV.C.1; Section IV.C.2.  We therefore do not reach this the merits of this claim unless Zeyon is able to demonstrate a fundamental miscarriage of justice.  He has not, however, provided any evidence of actual innocence to excuse his default.  *See Coleman*, 501 U.S. at 750.  Thus, his claim is procedurally defaulted and barred from federal review.

### 2.  Failure to Preserve Petitioner's Insufficiency of the Evidence Claim

Zeyon contends that trial counsel was ineffective for failing to "**FILE NECESSARY MOTIONS TO PRESERVE** [his insufficiency of the evidence claim] **FOR DIRECT APPEAL**." (Pet. at 9.)  We conclude that any constitutional error attributable to Zeyon's trial counsel for failing to preserve this claim is moot.  On May 27, 2003, Zeyon brought a PCRA petition claiming his trial

---

[14] We note that while the PCRA statute of limitations provides for certain exceptions to the one year limitations period, "any petition invoking an exception . . . shall be filed within 60 days of the date the claim could have been presented."  42 Pa.C.S. § 9545(b)(1)(i)-(iii), (b)(2).  Petitioner does raise a argument that would provide a basis for the invocation of one of these exceptions, and would now be barred from presenting any such argument in state court with respect to each of the claims in his present federal petition.

counsel was ineffective for failing to appeal his conviction. *Petition for Relief Under the Post-Conviction Relief Act*, *Commonwealth v. Zeyon*, CP No. 0201-0542 (Ct. Com. Pl. May 27, 2003). On July 13, 2004, the PCRA court reinstated Zeyon's direct appeal rights *nunc pro tunc*. *See* Resp. Ex. B (reflecting Zeyon's direct appeal rights were reinstated); N.T., PCRA Hearing, 3/10/2004; N.T., PCRA Hearing, 6/22/2004. The state courts therefore remedied any constitutional error that may have resulted from trial counsel's performance by providing Zeyon a second opportunity to raise his insufficiency of the evidence claim on direct appeal. Without any injury for this Court to redress, we conclude that this claim is moot.[15] *C.f. McLaurin v. Larkins*, 199 Fed. App'x 193, 195 (3d Cir. 2006) ("Even if McLaurin is correct that the [Parole] Board improperly relied on the . . . [wrong parole standard], his asserted injury--denial of parole--was remedied when he was paroled in 2005. Without an injury, McLaurin presents no case or controversy.")

---

[15] Respondent asserts that his claim is procedurally defaulted, in that Zeyon would now be prevented from asserting his claim by the PCRA statute of limitation. *See* Resp. at 6; 42 PA. CONS. STAT. § 9545(B) (reflecting any PCRA petition must be filed within one year after the sentence becomes final). Zeyon did not present the claim to the Pennsylvania Superior Court on direct appeal or on collateral review. *See* Resp. Ex. A, Ex. B at 1-3 (reflecting that he challenged trial counsel's failure to call character witnesses and sufficiency of the evidence on direct appeal in December of 2004); *id.* Ex. C (reflecting that claim present to Superior Court on PCRA review was based upon former PCRA counsel's failure to properly present the issue of trial counsel's failure to present character evidence); *Motion for Court to Reopen Case Due to Counsel's Conflict and Fraud Upon Court*, 5/9/07 (reflecting that Zeyon wanted review of PCRA court's determination on the basis of former PCRA counsel's "conflict.") If a petitioner has not exhausted state remedies, as required by 28 U.S.C. 2254(b)(1)(A), but further state court review is clearly foreclosed under state law, the claim is procedurally defaulted. *Lines v. Larkin*, 208 F.3d 153, 160 (3d Cir. 2000). We, however, do not pass upon the merits of Respondent's argument in that we conclude that Zeyon's claim is now moot.

### 3.      Failure to Impeach Complainant's Testimony

Petitioner asserts that trial counsel was ineffective for failing to "utilize the preliminary hearing transcripts that served to demonstrate the witness's acknowledgements of motivation to lie deliberately in order for charges to be brought[ w]here the witness was clearly angry that relationship could not last." (Pet. at 9.)  The Respondents assert that this claim is frivolous in that nothing in her testimony suggested that she ever wanted a relationship with the Petitioner.  (Resp. at 9-10.)  We agree with the Respondents.  At the preliminary hearing, the complainant testified that Zeyon stated that he wanted a "commitment" and to make her his "wife[,]" not that she wanted any kind of relationship with him.  N.T., Prelim. Hearing at 14.  In that there is no basis for Petitioner's claim, either in the preliminary hearing or trial transcripts, we recommend his claim be denied.

### 4.      Failure to Call Character Witnesses

Lastly, Zeyon contends that his trial counsel was ineffective for "fail[ing] to call character witnesses[,]" especially "Ms. Odessa Jones."  (Pet. at 9); (Pet'r Supp. Mem. at 6.)  The Respondents assert that the Superior Court rejected this claim on his PCRA appeal and its analysis was not contrary to, or an unreasonable application of, federal law.  (Resp. at 10-11.)  We agree.

Zeyon first presented this claim to the Superior Court on direct appeal.  *See* Resp. Ex. B at 3 (reflecting that Superior Court, in its March 7, 2006 opinion, considered whether trial counsel was ineffective for failing to "interview and present available witnesses to testify as to the appellant's good character[.]")  Although the trial court addressed the merits of this claim in its June 20, 2005 opinion, *see* Resp. Ex. A., the Superior Court dismissed the claim without prejudice because "there was no evidentiary hearing on the issue in the court below, and trial counsel did not testify."  (Resp. Ex. B at 4.)  On August 3, 2006, Zeyon filed a PCRA petition asserting that his trial counsel was

ineffective for failing to present character witnesses and requesting an evidentiary hearing. *Petition for Relief Under the Post Conviction Relief Act with Consolidated Memorandum of Law*, *Commonwealth v. Zeyon*, CP No. 0201-0542 (Ct. Com. Pl. Aug 3, 2006). On April 9, 2007, the PCRA court dismissed his petition in that he did not append any signed certifications from witnesses that would have testified at a PCRA hearing – a requirement of 42 PA. CONS. STAT. § 9545(d)(1). *See* Resp. Ex. C at 4.

On April 30, 2007, however, Zeyon filed a *pro se* notice of appeal, and on May 24, 2007, the PCRA court appointed David W. Barrish, Esq., as his PCRA appeal counsel. *See* Resp. Ex. C at 4. Although Mr. Barrish initially filed a "Statement of Matters Complained" asserting that there were "no non-frivolous matters that can be raised on appeal[,]" Zeyon alleged that he was ineffective and the Superior Court ordered Barrish to file a petition for remand to the trial court for the appointment of new appellate counsel, pursuant to *Commonwealth v. Lawrence*, 596 A.2d 165, 168 (Pa. Super. 1991). *See* Resp. Ex. C at 5-7. In this petition, Barrish attested that remand was necessary to challenge prior PCRA counsel's failure to properly raise the issue of whether trial counsel was ineffective for failing to present character witnesses. *Id.* In assessing his former PCRA counsel's performance, the Superior Court applied Pennsylvania law regarding ineffective assistance of counsel and determined that Zeyon was not prejudiced by his trial counsel's decision to not present character witnesses in that the evidence of his guilt was "overwhelming" and the trial court made clear in its July 20, 2005 opinion that "character witnesses would not have affected the verdict." *See* Resp. Ex. C at 8-9 (reflecting portion of Superior Court opinion where PCRA claim was denied in that Zeyon was not prejudiced by trial counsel's performance.)

The standard for judging ineffective assistance of counsel under Pennsylvania law is identical

to the clearly established federal standard enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, (1984). *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Under each standard, even if a petitioner is able to demonstrate that his counsel's performance was deficient, he must also show that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In analyzing whether Zeyon was prejudiced by his counsel's performance under Pennsylvania law, the Superior Court therefore did not apply a standard "contrary to" clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

We conclude that the Superior Court reasonably applied the *Strickland* analysis to the facts of this case. *See* 28 U.S.C. § 2254(d)(1) (directing that a writ will issue where the state court identifies proper legal standard, but unreasonably applies it to the facts of the particular case.) The trial court had "absolutely no doubt that the defendant was the perpetrator of this act and violated the complainant's trust." (Resp. Ex. A) (reflecting trial court's opinion as to Zeyon's challenge to trial counsel's performance on direct appeal.) The complainant offered detailed testimony that reflected that she repeatedly pleaded with Zeyon to "stop" and was "crying and shaking" when he proceeded to have sex with her a second time. NT. Vol. I at 33-34, 39-41. Her testimony was also corroborated by her aunt, who she called twice after the incidents had occurred. *Id.* at 19-20.

The trial judge adopted all material aspects of the complainant's testimony on the issue of consent and explicitly noted that his decision was not impacted by a "lack of character evidence[.]"[16]

---

[16] The trial judge carefully considered "both stories[,]" and ultimately concluded that the complainant testimony demonstrated that she did not consent to the sexual acts that occurred that night. N.T. Vol. II at 82-83. While the judge rejected Petitioner's testimony that the complainant came "onto him in fashion he described[,]" he thought their was "something more that [the
(continued...)

(Resp. Ex. A); *see* N.T. Vol. 82-87. Indeed, the judge was aware of Zeyon's character evidence, as counsel stipulated to the availability of three witnesses who would attest to his reputation in the community for being an honest, peaceful, law-abiding citizen. N.T. Vol. II at 61-64. We therefore conclude that the Superior Court's determination as to prejudice was reasonable and Petitioner is not entitled to relief under 2254(d)(1).

We also conclude that the Superior Court's decision was based upon a "reasonable determination of the facts in light of the evidence presented in the State Court proceeding[,]" as required by 2254(d)(2). The Court based its decision on the trial judge's determination that evidence of Petitioner's guilt was "overwhelming," in spite of the fact that the defense produced evidence of Zeyon's good character by stipulation. (Resp. Ex C at 8-9.) Our independent review of the record supports this determination. *See* N.T. Vol I at 33-44 (reflecting complainant's testimony as to the issue of consent); N.T. Vol II at 61-62 (reflecting Petitioner's attorney stipulated as to three available witnesses who would testify to his character for honestly and peacefulness); *id.* at 82-86 (reflecting trial judge's view that Petitioner's version of the events was not credible). We therefore conclude that the factual basis for the Superior Court's decision with respect to Petitioner's claim of trial counsel error for failure to present character witnesses was proper under 2254(d)(2) and recommend that this claim be denied.

---

[16](...continued)
complainant] could have done to try to avert at least a couple of [the] sexually offensive attacks."
*Id.* at 87. He therefore found Petitioner not guilty of rape and IDSI.

### C.          Ineffective Assistance of Direct Appeal Counsel

Petitioner next contends that his direct appeal counsel did not perform up to constitutional standards when he: (1) failed to conduct a proper investigation (Pet'r Mem. at 3-6); (2) failed to request "Post Trial Hearings" (*id.* at 5); (3) failed to sufficiently develop an argument in his appellate brief, resulting in the "waiv[er of] an important legal issue for his client[]" (*id.* at 8-9), and (4) failed to provide Petitioner with any materials related to his defense (*id.* at 3-4). He also asserts that his PCRA counsel deliberately failed to challenge direct appeal counsel's deficient performance on collateral review because both attorneys were members of the same law firm. *See* Pet. at 9; Pet'r Supp. Memo. at 4. In that there is no Sixth Amendment claim for ineffective assistance in state post-conviction proceedings, *see Coleman v. Thompson*, 501 U.S. 722, 752 (1991), we consider Zeyon's argument with respect to his PCRA counsel only as an attempt to excuse the default of his claims of appeal counsel error. *See* Section IV.B.1 (reflecting Zeyon is now precluded from seeking PCRA review under the statute of limitations). While we question whether the ineffectiveness of a PCRA counsel can constitute "cause" for a procedural default,[17] we conclude that it is unnecessary to reach the issue of "cause and prejudice" or "fundamental miscarriage of justice" in that Petitioner's underlying claims of appeal counsel ineffectiveness are without merit.[18] *See* 28 § U.S.C. 2254(b)(2)

---

[17] *See Coleman*, 501 U.S. at 755 (holding that a counsel's performance will constitute cause "only if it is an independent constitutional violation," but leaving open the question of whether an exception might be provided for cases where post-conviction proceeding is the first opportunity to raise a constitutional challenge); *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (holding that performance of counsel at PCRA hearing did not constitute cause for a procedural default, in that petitioner has no Sixth Amendment right to representation in post-conviction proceeding).

[18] Instead of dealing with a difficult "cause" question and applying the prejudice standard applicable in the procedural default context, which appears to present a more formidable hurdle for the Petitioner than the prejudice standard applicable under *Strickland*, we elect to dispose of his
(continued...)

(directing that a writ may be denied on the merits, "notwithstanding the failure of the applicant to exhaust" state remedies.)

Initially, we must determine whether the alleged conflict of interest between PCRA and appeal counsel alters our analysis of appeal counsel's performance. The *Strickland* standard is applied differently is cases where counsel "actively represented conflicting interests" and "an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *see Strickland*, 466 U.S. at 692. In these circumstances, if the petitioner demonstrates that an "actual conflict" tainted counsel's performance, prejudice is presumed. *Id.* Zeyon's direct appeal counsel, however, did not "actively represent" conflicting interests during his representation. While a conflict may have developed when his firm continued to represent Zeyon on collateral review, Petitioner has not articulated to our satisfaction how his loyalty was divided when he pursed an appeal to the Superior Court. The only work the firm had done prior to that point was to file the PCRA petition that resulted in the reinstatement of Zeyon's direct appeal rights. *See Petition for Relief Under the Post Conviction Relief Act*, *Ct. of Com. Pleas, Philadelphia County*, CPNo. 0201-0542 (Ct. Com. Pl. May 5, 2003). Thus, in that no action attributable to the firm was subject to challenge on direct appeal, we conclude that no conflict existed and consider appeal counsel's performance under *Strickland*'s two-prong test.[19]

---

[18](...continued)
claim on the merits as provided by 28 U.S.C. 2254(b)(2). *See United States v. Frady*, 456 U.S. 152, 170 (defining prejudice as an "actual and substantial disadvantage, infecting the whole trial with error of constitutional proportions"); *Strickland*, 466 U.S. at 691 (defining prejudice as a being present when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different.")

[19] We are troubled by the fact that the same firm represented Zeyon on direct appeal and
(continued...)

## 1. Failure to Properly Investigate

Zeyon asserts that the performance of appeal counsel in "failing to have [the preliminary hearing transcripts], or failing to utilize such records at the very least demonstrates a specific failure to properly investigate." (Pet'r Mem. at 4.) Although Petitioner does not discuss what his appeal counsel would have discovered had he properly reviewed the preliminary hearing transcripts, he does assert that his trial counsel erred in deciding not to "utilize the preliminary hearing transcripts" during his questioning of the complainant at trial. (Pet. at 9.) We therefore construe his argument as a challenge to appeal counsel's failure to investigate and discover that trial counsel was ineffective in this respect.

Even if we were to accept that Zeyon's appeal counsel did not attain a copy of the preliminary hearing transcripts and that this failure was "professionally unreasonable[,]" *see Strickland*, 466 U.S. at 691, we are unable to conclude that Petitioner was prejudiced. As we have already determined,

---

[19](...continued)
during his subsequent PCRA challenge, especially in that the state courts did not indicate that they were aware of any potential conflict of interest. *Compare* Resp Ex. C at 3-4 (reflecting that in Superior Court's May 28, 2009 opinion it noted that Zeyon had retained new counsel for direct appeal and subsequent PCRA review) *with Petition for Relief Under the Post Conviction Relief Act*, *Ct. of Com Pleas, Philadelphia County*, CP No. 0201-0542, (Ct. Com. Pl. May 27, 2003); *Notice of Appeal*, *Commonwealth v. Zeyon*, CP No. 0201-0542 (Ct. Com. Pl., Aug. 10, 2004); *Petition for Relief Under the Post Conviction Relief Act with Consolidated Memorandum of Law*, *Commonwealth v. Zeyon*, CPNo. 0201-0542 (Ct. Com. Pl. Aug 3, 2006) (reflecting that the attorney who filed Zeyon's initial PCRA petition, requesting reinstatement of his appellate rights in 2003, the attorney who filed his direct appeal upon reinstatement of his appellate rights, and attorney who filed the subsequent PCRA petition signed for attorney "A. Charles Peruto Jr.", or under "Law Offices of A. Charles Peruto, Jr.") We also note, however, that his PCRA appeal counsel, David W. Barrish, Esq., was not an associate of any of the prior counsel in the case, and therefore provided Zeyon an opportunity to challenge the performance of his appeal counsel and former PCRA counsel, without any potential conflict. Indeed, Attorney Barrish ultimately challenged the performance of Petitioner's former PCRA counsel, but the Superior Court concluded that the claim was without merit. (Resp. Ex. C at 7-9); *see Petition for Remand to Raise Pro Se Claims of Ineffective Assistance of Counsel*, CP No. 51-CR-0105421 (Jun. 6, 2008).

Zeyon's underlying claim of trial counsel error is without merit. *See* Section IV.B.3. We are accordingly unable to attribute constitutional error to appeal counsel for failing to raise this claim. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) (holding counsel cannot be ineffective for failing to pursue meritless claims or objections.)

Zeyon also asserts that appeal counsel allowed the "prosecution to engage in matters that the prosecution fully knew that they could lawfully be held accountable for, and did the very same thing with [trial counsel.]" (Pet'r Mem. at 6.) He further contends that these "facts demonstrate that [trial counsel and appeal counsel] all deliberately failed to investigate."[20] (*Id.*) We construe his argument as a claim that appeal counsel was ineffective for failing to discover and assert a *Brady* violation and a derivative ineffectiveness claim. However, in that we conclude that the prosecution did not violate Petitioner's due process rights under *Brady*, *see* Section IV.D, his appeal counsel could not be deemed ineffective for failing to raise either of these claims. *Sanders*, 165 F.3d at 253.

## 2.    Failure to Request Post Trial Hearing

Zeyon asserts that the "counsel whom represented this petitioner on reinstated direct appeal, most certainly could have made a legal request for Post Trial Hearing[s i]n order to validate particular concerns for the legal record . . . [and] demonstrate clear on its face ineffectiveness of trial counsel." (Pet'r Mem. at 5.)   Initially, to the extent the Petitioner is challenging counsel's failure to properly request a hearing to consider trial counsel's failure to call character witnesses, we conclude that this claim has no merit.   As we discussed above, the Superior Court properly determined that Zeyon was not prejudiced by trial counsel's decision to present no additional

---

[20] He also raises this claim with respect to PCRA counsel, but we do not address this argument in that there is no constitutional right to effective post-conviction counsel. *See Coleman*, 501 U.S. at 752.

character evidence. *See* Section IV.B.4. In that trial counsel's performance was not constitutionally deficient in this respect, we cannot attribute error to appeal counsel for not requesting a hearing or otherwise pursing this claim. *Sanders*, 165 F.3d at 253 (3d Cir. 1999).

Zeyon specifically contends, however, that a post trial hearing should have been requested, "[e]ven if no more than for [trial counsel's] particular failures to have cross examined related to telephone records that his client testified to before the questions as posed by the prosecution."[21] (Pet'r Mem. at 5.) He further explains that these "phone records" could "dispute a prosecutorial premise[,]" proving that the "state witness . . . falsified testimony." (*Id.* at 12.) Although he does not indicate exactly what the "phone records" would demonstrate, we construe his argument as a challenge to his appeal counsel's failure to request a hearing to develop a claim against trial counsel for not using "phone records" to impeach complainant's testimony. This claim is without merit. As set out in our analysis of his *Brady* claim, we conclude that Zeyon's phone records are of minimal significance, and would not provide a basis to materially impeach complainant's account of the significant events. *See* Section IV.D. Thus, even accepting appeal counsel could have properly requested a "post-trial hearing" on this issue, his failure to do so does not constitute constitutional error.

---

[21] We note that Zeyon provides further explanation as to why his appeal counsel should have requested a post trial hearing, but we are unable to understand his reasons. He attests that, "If not in relationship to the very facts verified within the trial transcripts related to the witness testimonies. Alone with that of the Police regarding the particular property and search warrant factors as made a part of the legal record [sic]." The testimony of Lieutenant Bagnell reflects that two search warrants were issued after the incident, "one for the defendant's blood and one for the residence[.]" N.T. Vol I at 82-83. Zeyon may be mentioning a "search warrant" in connection with his telephone records because his phone was found at the scene, but we are unable to locate anything in the state court record that inventories what the police collected that night and are unable to determine how such information would impact our analysis.

### 3.     Failure to Sufficiently Develop Argument in Appellate Brief

Zeyon contends that his appeal counsel was ineffective for filing a brief, "as related to the insufficiency of the evidence[,]" which "factually demonstrated itself to be totally devoid of anything more than what the Pa. Superior Court called a Bald Assertion." (Pet'r Mem. at 8.)  Indeed, the Superior Court refused to substantively review the argument and deemed it to be waived. (Resp. Ex. B at 4-5.)  The waiver of this claim, however, can represent ineffective assistance of counsel only if counsel's error "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.  We have already determined that there was sufficient evidence to convict Zeyon, and therefore conclude that counsel's failure to develop this issue on appeal does not amount to a constitutional violation. *See* Section IV.A.

### 4.     Failure to Provide Petitioner with Materials Related to His Case

Lastly, Zeyon contends that he "has never been provided any discovery materials from any of the counsel or counsels in this matter, to date." (Pet'r Mem. at 14.)  Petitioner claims that the failure of counsels to provide these materials violates *Maleski by Chronister v. Corporate Life Insurance Company*, a Pennsylvania case which held that when a client pays an attorney for the creation of a legal document, the attorney must turn it over upon his or her request. 641 A.2d 1, 6 (Pa. Comwlth. 1994) (citing PA. RULES OF PROF. CONDUCT 1.15(b)); *see* Pet'r Mem. at 4.  We construe Zeyon's reference to the *Maleski* decision, which is based upon an interpretation of the Pennsylvania Rules of Professional Conduct, as an attempt to set out the "prevailing professional norms" with respect to an attorney's duty to turn over the legal files of a accused. *Strickland,* 466 U.S. at 688.  We consider Petitioner's argument to be consistent with the American Bar Association Standards for Criminal Justice, which provide that "counsel should keep the client informed of the

developments in the case and the progress of preparing the defense and *should promptly comply with reasonable requests for information*."   ABA Standards for Criminal Justice, Standard 4-3.8 (emphasis added).   While the ABA standards are "guides, but only guides, to what is reasonable[,]" we accept that as a general matter, an attorney would be expected to respond promptly to a reasonable request from a defendant for information about his case.  *See Hummel v. Rosemeyer*, 564 F.3d 290, 297-98 (3d Cir. 2009) (stating ABA standards are guides, but the reasonableness of counsel's conduct must be judged based on the facts of the particular case at the time the questioned conduct occurred).

Along with his submission in support of his petition, Zeyon includes a letter that he sent to his appeal counsel on February 4, 2007 where he requests all "the files relating to [his] case." *Letter to Charles A. Peruto Jr., Esq.*, 2/4/2007; *see also Letter to David W. Barrish, Esq.*, 2/4/2008 (reflecting that he sent essentially the same request to his PCRA appeal counsel in February of 2008). This letter, however, was sent almost a year after the Superior Court affirmed the trial court's decision on *nunc pro tunc* appeal, *see* Resp Ex. B, and while his PCRA petition was pending. Although we do not consider the timing of Petitioner's request to alter appeal counsel's responsibilities under the ABA standards or the *Maleski* decision,[22] we do have serious questions about whether *Strickland*'s reasonable performance analysis applies to the error of an attorney who represented the petitioner at a stage critical to the criminal process (direct appeal), but did not err until "after exhaustion of direct appellate review." *Coleman v. Thompson*, 501 U.S. 722, 756 (1991) (holding performance of post-conviction counsel is not basis for Sixth Amendment ineffectiveness

---

[22] *See* ABA Standards for Criminal Justice, Standard 4-8.5 (providing that appeal counsel who continues to represent defendant in post-conviction proceeding "should be guided generally by the standards governing the conduct of lawyers in criminal cases.")

claim). Indeed, accepting Zeyon's allegations as true, appeal counsel did not "deliberate[ly] fail to provide any of the legal records" until February 2007, during PCRA review. (Pet'r Supp. Mem. at 6.)

Even if we concluded that counsel's performance was deficient under *Strickland*, we would nevertheless conclude that Zeyon cannot demonstrate that his "performance prejudiced the defense." 466 U.S. at 687-88. Petitioner does not explain how counsel's failure to provide him materials related to his case impacted the result of his direct appeal.[23] Instead, he asserts that appeal counsel refused to turn over materials that he has in his possession in an attempt to "illegal[ly] suppress" the fact that he failed to "have" or "utilize" the materials necessary to file a meaningful direct appeal. *See* Pet'r Mem. at 3-10. We have already determined that appeal counsel's performance was not constitutionally deficient during the pendency of Zeyon's appeal, and are unable to conclude how Zeyon's allegation regarding appeal counsel's behavior during PCRA proceedings would impact our conclusion.[24] *See* Pet'r Supp. Memo at 4. We therefore recommend that his claims of appeal counsel error be denied.

---

[23] We also note that notwithstanding Zeyon's request for discovery and an evidentiary hearing, he does not claim that he was unable to file a federal habeas petition due to his inability to secure materials from his attorneys. Indeed, while he claims that he has not received a **"MALESKI RESPONSE FROM ANY COUNSEL,"** he did receive copies of his trial transcripts from his PCRA counsel after the pendency of his PCRA appeal. (Reply at 6.)

[24] Zeyon also appears to raise the same claim with respect to his trial counsel. He does not, however, provide any indication that he ever requested transcripts or other discovery materials from his trial counsel and does not provide any argument as to how, but for this alleged error, there is a reasonable probability that the result of his trial would have been different. *See Strickland*, 466 U.S. 694. In any event, this claim is procedurally defaulted and Zeyon makes no argument as to why this default should be excused.

**D.     Due Process Claim Concerning Prosecution's Failure to Produce Exculpatory Evidence**

In his final ground, Zeyon contends that the prosecution "withheld extremely exculpatory evidence" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and the "prosecution relied upon such suppression to **suborn perjury**." (Pet. at 9-10) (emphasis in original.) He further asserts that his failure to present these claims to the state court is attributable to the prosecution's suppression of the alleged *Brady* material and "all counsel's ineffectiveness as a means to protect itself [sic]." (Pet. at 10); (Pet'r Supp. Mem. at 2-3.)     Respondents contend that Petitioner's claims are procedurally defaulted and without merit. (Resp. at 12.) We agree with the Respondents.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 372 U.S. at 87. To establish a *Brady* violation, the Petitioner must demonstrate that: (1) evidence suppressed by the state, either willfully or inadvertently; (2) is favorable to the accused, either because it is exculpatory or impeaching; and (3) material to the outcome of the case. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). As the Supreme Court noted in *Banks v. Dretke*, the "cause and prejudice" standard for excusing procedural default can "parallel" the components of a *Brady* violation. 540 U.S. 668, 691 (2004). Indeed, if Zeyon could demonstrate that the "cause" for his failure to develop facts at trial was the prosecution's suppression of the evidence and that he was "prejudiced" because the suppressed evidence was "material," he would at the same time succeed in establishing the elements of his *Brady* claim. *See id.*

We conclude that Zeyon has not demonstrated cause and prejudice, and would therefore be

unable to satisfy the elements of a *Brady* claim. Petitioner claims that the prosecution suppressed "**PHONE RECORDS,**" including his own phone records, *see* Pet'r Mem. at 13, and those of both the complainant[25] and the "company" owned home for the mentally disabled where the incident occurred. (Pet. at 10.) Aside from these records, he points to the suppression of a "a towel utilized by this petitioner to take a shower."[26] (Pet'r Mem. at 13.) The prosecution will not be found to "suppress" evidence that the accused could have obtained through the exercise of reasonable diligence or which is not in the actual or constructive possession of the prosecution. *United States v. Risha*, 445 F.3d 298, 302 (3d Cir. 2006); *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991); *see Wilson v. Beard*, 589 F.3d 651 (3d Cir. 2009). The prosecution "constructive possesses" any material that it "should have known was in existence." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). Although prosecutors have a "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, such as the police[,] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), information held by other entities not operating on the government's behalf are not within the constructive possession of the prosecution. *See United States v. Pelullo*, 399 F.3d 197, 216-18 (3d Cir. 2005) (noting that the "prosecution is only obligated to disclose information known to others acting on the government's behalf").

Petitioner's own phone records do not constitute suppressed material in that he could have obtained them himself through the exercise of reasonable diligence. *See Risha*, 445 F.3d at 202. As

---

[25] His petition actually identifies "petitioner's witness's" phone records (Pet. at 10), which we assume are those of the complainant in that she was the only defense witness other than Petitioner. N.T. Vol. II at 1-3.

[26] Petitioner also lists "**COMPANY RECORDS**" as wrongfully suppressed evidence (Pet'r Mem. at 11.) As his petitioner reflects, however, his reference to company records relates more specifically to the "company's" phone records. *See* Pet. at 10.

for the phone records of complainant and the company, there is no indication that these materials were in the actual possession of the prosecution and we seriously question whether they were in its constructive possession. The phone companies who maintain these records are certainly not "member[s] of the prosecution team," *Pelullo*, 399 F.3d at 218, and we will not impute an affirmative obligation upon the prosecution to collect phone records absent a request by an accused or a specific indication that the records would be material. *See United States v. Johnson*, 195 Fed. App'x 52, 59 (3d Cir. 2006) (holding that district court was correct in finding evidence was not wrongfully suppressed in that there was "no indication that the U.S. Attorney's Office possessed or should have possessed the item"). With respect to the towel, Zeyon testified at trial that "[e]ven the towel I used to wash, I believe the police have it, I hang it up in the basement and leave it up there." N.T. Vol. II at 77. Thus, in that he was aware of the towel and thought it was in the possession of the prosecution, the towel was not "suppressed." *See Risha*, 445 F.3d at 202. Through the exercise of reasonable diligence, Zeyon could have inquired about and obtained the towel if it was indeed available.

We are also unable to determine how the evidence Zeyon identifies is exculpatory or impeaching. *See Strickler*, 527 U.S. at 281-82. Zeyon asserts that his own phone records and the towel he used would "verify that petitioner spent more than enough time away for a call to the police." (Pet'r Mem. at 13-14.) However, while the complainant partially attributed her failure to call for help to the fact that "everywhere she went, [Zeyon] was right behind [her,]" her testimony reflects that she had several opportunities to call for help, but was "scared" and felt as though she needed to be careful not to "arouse [Petitioner's] suspicion." *See* N.T. Vol. I at 46-51, 69-72, 79-81. She asserted that, after an initial call to her aunt and a friend in an attempt to signal to them that she

was in danger, she went "downstairs to sneak into the office to dial 9-1-1 on the office phone," but mistakenly used the fax machine. N.T. Vol. I at 46-50, 70; *see also* N.T. Vol. II at 56-58. According to her testimony, she then remembered her cell phone was in her pocketbook, and went downstairs to the "staff bathroom" and told her aunt that she had been raped and to call the police. *See* N.T. Vol. I at 19-21, 50-51. We are therefore unable to decipher how this evidence would provide a basis to impeach complainant's credibility in the way Petitioner describes. Further, he provides no argument as to how the complainant's phone records or those of the company would undermine the complainant's testimony.

However, even if we were to accept that the evidence was suppressed and impeaching, and therefore basis for "cause," Zeyon's claim would still fail in that he cannot establish prejudice. Unless suppressed evidence is "material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default." *Strickler*, 527 U.S. at 282. The materiality standard is met when, reasonably considered, the evidence places "the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 434-35. As we have already determined, it is unclear to us how Petitioner's phone records would provide a basis to challenge complainant's testimony. She never explicitly claimed that she did not use his phone, and the records themselves would not provide Zeyon a basis to challenge her contention that his presence in the house, even if he was not always in her immediate vicinity, made it difficult for her to call for help. *See* N.T. Vol. I at 48-51. Thus, we conclude that this evidence would not have placed the case is such a light as to undermine the trial judge's verdict. *See* Resp. Ex. A at 4 (reflecting trial judge, in addressing whether further character evidence would have impacted his decision, stated he "had absolutely no doubt that defendant was the perpetrator of this act and violated the complainant's

trust.")

Similarly, we are unable to determine how complainant's phone records would have in any way undermined the trial court's decision. Presumably, the complainant's phone records would demonstrate that she called her aunt from her cell phone. *See* N.T. Vol. I at 47-49. Even assuming, however, that her records did not reflect that the call was placed on her phone, her aunt would still have testified that the complainant "called again, it was about three-thirty, and the reason why I know it was three-thirty is because I looked at the clock. . . . and when I answered the phone, she said, . . . I've been raped, call the police." N.T. Vol. I at 21. Petitioner does not challenge the truthfulness of her aunt's testimony and there was no evidence offered that would suggest both complainant and her aunt fabricated the fact that this conversation took place.

It is also unclear how the company's phone records would have impacted the outcome of the case. At trial, the complainant testified that, after the incident had occurred, Zeyon was "calling people and wishing them a happy new year[]"on his "cell phone" and that there was another phone "right beside him." N.T. Vol. I at 45-47. She claimed that she "asked to use the phone,"and then called her aunt in an attempt to signal to her that something was wrong.[27] *Id.* at 46-47. While it is

---

[27] She also testified that she used the cell phone to call her "friend, Vassle, because he's somewhat near the area, and he wasn't there, and I told his aunt, I said, well, I'm working at 8824 tonight, you know. I told her a couple of times. Maybe she would pick up on it and he would know where I am or something." N.T. Vol. I at 47. Vassle's aunt did not testify, and no further testimony was taken with respect to this call specifically.

Additionally, we note that her testimony is not entirely clear with respect to what phone she used to make these calls. Our reading of the transcript reflects that complainant claimed that she used Zeyon's cell phone. After she discussed her calls to her aunt and friend, she testified that "[h]e went back to calling his people on the cell phone." N.T. Vol. I at 46-47. Further, in her statement to police immediately after the incident, she wrote "[h]e was calling his family[,] then he asked to use the phone to call my family and he let me use it [sic]." (Resp. at Ex. D. at 3.) After she claimed she made a call to her aunt and friend, she testified that "[h]e went back to calling his people on the

(continued...)

not entirely clear what phone she used, her aunt's testimony corroborated that the complainant called and made a strange statement that she did not understand. N.T. Vol. I at 19-21. The ability of Petitioner to pinpoint the specific phone that she used to make this call, would not create a reasonable probability that the outcome of the trial would have been different, especially considering the overall consistency of complainant's testimony as to whether she consented to the sexual acts that occurred that night and the view that the trial court expressed as to Zeyon's version of the events. *See* N.T. Vol. II at 82-83.

Finally, we conclude that the towel that Zeyon allegedly used to take a shower would also not have impacted the trial court's decision. Even if we accepted that this towel would demonstrate that Zeyon indeed showered and spent a significant amount of time away from the complainant, we would still conclude that this evidence would be immaterial for *Brady* purposes. The complainant was extensively questioned about her opportunities to call the police and made clear why she felt unable to successfully make that call. N.T. Vol. I at 45-52, 57-59; *see also* Resp. Ex. D at 4. Further the trial court was fully aware that Petitioner claimed he had left complainant to "wash" himself, N.T. Vol. II at 77, and still credited complainant's testimony. *See id.* at 82-88.[28]

---

[27](...continued)
cell phone." N.T. Vol. I at 46-47. We consider these statements, taken together, to support that her contention was that she used his cell phone to make her initial calls for help. This issue is in not clear from the fact of the record, however.

[28] In that our analysis of cause and prejudice also provides a basis to deny his *Brady* claim on the merits, *see Strickler*, 527 U.S. at 282, we do not consider a substantive "miscarriage of justice" analysis to be necessary. We note, however, that the evidence that Zeyon identifies as subject to *Brady* do not represent "newly discovered" evidence that makes it "more likely than not" that a reasonable juror would find that petitioner not guilty. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Indeed, for the reasons we provide above, we do not consider the absence of the phone records or towel that Zeyon identifies to have impacted the trial court's determination.

Along with his *Brady* claim, Zeyon offers a different although related due process claim that the prosecution relied upon the wrongfully suppressed evidence to "**COVER UP SUBBORNATION OF PERJURY**." (Pet. at 9-10.) A conviction obtained by the knowing use of perjured testimony must be set aside if there is a reasonable likelihood that the false testimony could have affected the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Zeyon did not present this claim to the state courts, but given our conclusions with respect to Petitioner's *Brady* claim, we reject his *Giglio* claim on the merits. *See* 28 § 2254(b)(2) (providing that claim can be denied on the merits, notwithstanding petitioner's failure to exhaust state remedies.)

Petitioner does not specifically discuss what false testimony was covered up by the suppression of the alleged *Brady* materials. He does not contend that the phone records would reveal inconsistencies in her testimony, but rather concentrates on the fact that she exaggerated the extent to which she was prevented from calling the police after the incident occurred. (Pet'r Mem. at 13-14.) As we have already determined, her testimony in this regard remained consistent from her initial police report up until trial. It was credibly corroborated, N.T. Vol. I at 18-23, and accepted by the trial judge. N.T. Vol. II at 82-84. There is no reasonable likelihood that the alleged Brady materials would have affected the trial judge's decision. *See Giglio*, 405 U.S. at 154. We conclude that his claim is without merit.

## V.    CONCLUSION

Initially, we rejected Zeyon's request for discovery and an evidentiary hearing. We have determined that he unable to demonstrate good cause for his discovery request, and that he is unable to meet the AEDPA standards that would permit an evidentiary hearing in our court. Even if we were to accept that he could establish the evidence he seeks to offer through further development of

the record, we are satisfied that he is not entitled to relief on any of his claims.

We conclude that his sufficiency of the evidence claim is procedurally defaulted, but would fail in any event as there was ample evidence to convict him of sexual assault, indecent assault, and indecent exposure charges. With respect to his claims of ineffective assistance of trial counsel, we conclude that all but one of them was either defaulted, moot, or frivolous. As to his claim that trial counsel erred when he failed to present additional character on his behalf, which he fairly presented to the Superior Court, we have no difficulty concluding that the state court reasonably applied federal law in disposing of it. Petitioner's other claims of ineffective assistance of counsel are also without merit. His claims against PCRA counsel are not cognizable on habeas review, and although his claims of appeal counsel error are defaulted, we have concluded that they are without merit in any event. Lastly, we conclude that his *Brady* claim is both defaulted and without merit. Zeyon has failed to establish that the materials in question were suppressed by the prosecution or that they were material.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in denying the present petition. Accordingly, we recommend that a COA should not issue.

Our Recommendation follows.

## **RECOMMENDATION**

**AND NOW**, this   26th     day of February, 2010, it is respectfully **RECOMMENDED** that the motion for discovery and/or an evidentiary hearing is **DENIED**.   It is **FURTHER RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED** and that a certificate of appealability should **NOT ISSUE**, as we do not believe that Petitioner has made a substantial showing of the denial of a constitutional right.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE